The next case is People v. Bullock. We have Mr. Wells for the appellant, Mr. Cormack for the appellant. You all get settled in. We will proceed. Proceed. May it please the Court. Counsel. My name is Larry Wells and I represent the defendant, Mr. Bullock, in this cause. Mr. Bullock was convicted of driving while impaired by alcohol. He urges this Court to reverse his conviction for lack of evidence. Now when this type of issue is raised before the Court, we have to look at the evidence in the light most favorable to the State. But here, even when we do that, the evidence is insufficient to uphold the conviction. Mr. Bullock was involved in a rear-end collision. He was driving a car that struck a van that was waiting on a two-lane road to make a left-hand turn. As a result of this collision, he suffered an injury to his forehead and was knocked unconscious. And he was not in his right mind for a considerable time afterwards. Now the State's evidence of impairment is primarily the smell of alcohol and an attribution the arresting officer attributed to Mr. Bullock, the statement that he was drunk. Now this evidence is not sufficient to uphold the conviction. In the first place, evidence of consumption of alcohol is not evidence of impairment. And secondly, this evidence of imputing a confession of being impaired by alcohol isn't sufficient because it was taken from someone who was knocked on the head and rendered unconscious. But more importantly, if there's an objective evidence that's here, objective and scientific observations that show a lack of impairment. We cite lots of cases in the brief for outward indicia of impairment. There's a person's bloodshot eyes is a classic example, glassy stare, disheveled clothing, stumbling, speech garbled, things along those lines. Also, of course, driving erratic. But there's none of that evidence that's present here. The first responder in this case was a nurse from the Department of Corrections who was nearby. She was on the scene in moments. She found Mr. Bullock trapped in the front seat of the car, completely unconscious and unresponsive. She used a pressure bandage on his forehead to stop the heavy bleeding. She was in the back seat. She was right in his face for several minutes until the second responders came, the emergency technicians with the ambulance. She didn't smell any alcohol at all. The second person who came was the emergency technician, Todd Tess. He stayed with Mr. Bullock for a long time, and he checked him. He found that he was unresponsive except to pain. He could, by rubbing his shirt on the cars with his knuckles, he could get a pain response, but he couldn't get any verbal response for a while. Gradually, Mr. Bullock became more and more conscious and was able to respond to verbal stimulus. But one of the things that he did is crucial to this case. He checked Mr. Bullock's eyes for bright light response. It turns out that the pupil response is like a window into the working of the brain, and he testified about how a bright light makes people normal. Pupils get small very quickly. Brisk and normal reaction, he called it. And a person who's influenced by alcohol, for example, will tend to have a poor and sluggish reaction to alcohol. Well, here, there was a very interesting response. It was uneven. One eye was brisk and normal, one eye was sluggish, and he explained what that cause could be, and that is concussion. A concussion causes that. Get knocked on the head, knocked unconscious, you'll get a sluggish reaction, perhaps from one side or maybe both sides. Well, here you had a brisk and normal reaction, and what's more, a half an hour later, once Mr. Bullock was removed from the crash and put in the ambulance, this test was repeated, both eyes were brisk and normal. This expert viewed Mr. Bullock's eyes closely. He saw no glassy stare. He saw no bloodshot eyes. There's no evidence of any other indicia, disshadowment, or stumbling, or poor speech. None of those things. But the jurors heard a paramedic, police officer, and a doctor say that he appeared to be intoxicated, and the defendant himself said, I'm drunk. Is that correct? I do not believe that there was evidence from anybody who said that he was impaired by alcohol. I don't remember. Appears to be intoxicated in the doctor's report? That was not admitted into evidence. I don't know why they put it in their brief, but it wasn't admitted into evidence. Was the admission in evidence? Oh, yes. Yes, that's right. Now, I should mention that that was disputed. There was other people present, and other people who were there said that what Mr. Bullock said was just that he had a drink, or had a few drinks, not to be impaired in any way at all. And so the objective scientific evidence shows a lack of impairment. There's no household sign of impairment, and the risk pupil response is consistent with a lack of impairment. And so in light of the other evidence in the case, there's insufficient evidence to convict. Now, there's one other point the state tries to make, and I like this one a lot, I wish I thought of it. It's the van stopped on a two-lane road about to make a left-hand turn, and the driver of the van is waiting for oncoming traffic, and he looks into his rear-view mirror and sees that the road looks clear to the north, and then once the people pass, oncoming traffic pass, he looks down and starts to make his left-hand turn, and two seconds, he's struck from behind. Now, the state argues that this shows erratic driving because of the high rate of speed. There's a clear road a half a mile behind, a straight road, half a mile behind, he looks back, and so they argue in their brief that Mr. Bullock's car traveled half a mile in that two seconds. Well, that's a mile every four seconds. That is 900 miles an hour. That was some kind of Ford Focus. I'm sure he had a fine Ford Focus, but if it had a rocket strapped to it, there'd be something in the record about it. No, that's not what this is about. It's not about that at all. What is it about? It's about road conditions. When that driver looked in that mirror and saw nothing, that's exactly what Mr. Bullock saw when he looked out his front window. Why? Because you look in the state's brief. It's raining, there's water on the pavement, it's cloudy, there's oncoming traffic, the spray comes up, you look in your rearview mirror, you don't see anything, the person looking forward, he doesn't see anything either. That's what this is about. It's not about someone traveling 900 miles an hour or traveling half a mile, no. It's about road conditions and the ability to observe. They observed the same thing. None. Road conditions caused this accident. Did the jurors hear that argument? The argument about the speed at 900 miles an hour, they did not make that argument. They did not make the argument about the speed. The state made the argument in its brief about how the review in the rearview mirror shows that Mr. Bullock was traveling at a high rate of speed that caused the accident. Not 900. Huh? Not 100 miles. I'm sorry? Not, they didn't have 900 miles. They did not. What they argued was, in their brief they argued that, this is on page 6, that the defendant failed to see a bright yellow van with its blinker flashing for the time it took him to travel half a mile. It shows that he was impaired. And, of course, they admit that the time that we're talking about is two seconds, where they check the rearview mirror, the guy checks the rearview mirror and doesn't see anything. That's on page 3. And they say he saw nobody. Well, he couldn't see anyone. Why couldn't he see anyone? It wasn't because he could see half a mile, nobody was on the road. Somebody was there, right there. And the reason he didn't see anyone was because of the water on the road. There's no dispute about there being a rainy day and water on the road. And they saw the same thing, and that's what caused the collision. They both looked, saw nothing. The crash was caused by road conditions and not caused by impairment. Were the defendant's lights on at the time? You know what? I don't remember anything. Was there any evidence as to lights? I don't remember anything about lights. Was that before the rule? I'm sorry? Was this day or night? Oh, I'm sorry. It was day or night. That's what I thought. This was in daytime. There was a delivery van. Okay, was the statute in effect that you have to have your lights on if it's raining? Oh, I'm sure that statute has been in effect for a really long time. I think the way the rule goes is if you're required to use your windshield wipers, because you have to have your lights on. Okay, but there was no evidence as to the lights on or off? Well, he didn't get a ticket for it. The question is, was there any evidence of the lights on? I don't remember anything on the record on it either way. I do know that he didn't get a ticket for it. That's the only reason I answered that. I wasn't trying to evade the question. I don't recall anything on the record about it. So we'd ask this Court to reverse the conviction for lack of evidence unless there's questions. Mr. Wells has not pleaded for a vote. Ms. McCormick? Counsel, the defendant cites the correct standard but then doesn't apply it. He takes the evidence entirely in the light favorable to the defendant. Let me apply the correct standard. And let me state both straight off that no, the doctor's reports were not in evidence. Why I put that in my brief was to say the defendant keeps harping on having a brain injury, but there was no evidence presented to the jury that he had a brain injury. And from that, he then leaps to the conclusion that everything the defendant said was irrational and not reliable. But the reason I put that in there was to say that there was evidence, medical evidence, that could have come in but didn't come in, and perhaps the reason he didn't present any evidence about a brain injury is because if he'd done so, that medical evidence would have also shown that he was intoxicated. And that's the only reason. But I do want to make it clear that evidence did not come in, and my point is the jury had no evidence, no medical evidence before it, that the defendant had a brain injury except for one thing, and I'll get to that in a second. But Eric Blades, the driver for the DHL parcel service, was driving a bright yellow van, and he was stopped getting ready to turn left. He had his blinker on, and he was getting ready to turn left into the Shawnee Correctional Center. He was stopped four to five seconds, and he did look behind, and he said he could see a half mile behind him and he could see a good distance in front of him, and that he didn't see anyone coming. Now, the police officer, Trooper Usher, did indicate that it was raining and that there were wet conditions. Now, on the other hand, it is daylight, it's around 2 o'clock, so it wasn't entirely, visibility wasn't really an issue. Eric Blades testified he could see a half mile behind him, and the visibility was fine. There were wet conditions, but there wasn't anything about water being on the road. He stopped, he looks behind him, and two seconds later, he's hit from behind with such force that the guard in the tower who observed just after the impact, the yellow van was hit with such force that it came up three feet off of the ground in the back tires, and it rolled on its front two tires. So it was hit with an extreme amount of force, and Eric Blades said he looked at the road and there weren't any tire tracks. So apparently, there wasn't any braking either. Okay, you've acknowledged what wasn't in the record, that you have argued in your briefing, what Mr. Wells argued, what about the blood alcohol, was that in the record? No, no, absolutely, this did not come in. But the trooper, the reason I put that in there was to say there was no evidence about a brain injury, and perhaps because he didn't want his medical records to come in. That was my whole point, and it could have been shown. But, I mean, medical evidence of intoxication, but that doesn't matter to the case. What matters is what was before the jury. And what was before the jury is that they have this circumstance of the wreck itself, which, coupled with the other evidence of impairment, is some evidence that he was driving impaired. There's no, he just slams into the back of this bright yellow van in the middle of the day with his left blinker, blinking with such force that he knocks the van off the road, and it's riding off the road on its front two tires, backhand, three feet off the ground. There is testimony from paramedics and police. That's in the record. Yes, that is in the record. And the defendant's admission that he was drunk is in the record. And, well, anyway. So, Wendy Bailey, who was, there are two paramedics that treat him at the scene. Wendy Bailey's one, and the other one is Todd Test. Wendy Bailey said that when she approached the vehicle, because the defendant had to be removed from the vehicle, he was trapped in there, that there was an order of alcohol coming from the car and from the defendant. And Todd Test noticed the same thing. Todd Test was the one who was up in the defendant's face. Todd Test is the one who evaluates the defendant's pupils. Bailey does not. She's treating other aspects.  It's not from the car. It's from the defendant's breath. She doesn't remember the defendant ever losing consciousness. Perhaps he did briefly before she got there. Don't know. But all of the people that surround him and talk to him say that he does not lose consciousness, that he is lucid. Sometimes he dozes off at first, and they'll do a little rub to bring him back around. But he is not unconscious. He is lucid. He responds correctly to questions, and everybody thinks that he understands what he's being asked and understands how he's responding. She was there after the defendant was removed to the ambulance. She was there when the trooper knocked on the back, and they opened the back doors, and the trooper asked him if he'd been drinking, and she hears the defendant tell the trooper, yeah, he'd been drinking. So we have that mission, and that was overheard by Bailey. There's a lot of emphasis put on no staggering gait, et cetera. Well, the defendant was never walking. He was removed and placed on a stretcher and immobilized. And it's true. The trooper said that he didn't notice any slurred speech, but that's just one factor that wasn't there, but it doesn't mean he wasn't intoxicated. It is one factor that might show intoxication, but its absence in this context is meaningless in respect because they smell a strong odor of alcohol, the two paramedics and the trooper, coming from the defendant's breath. The defendant has admitted to Bailey and to Tess that he had been drinking, and he has admitted to the trooper that he was drunk. He tells the trooper that he started drinking at 1.30. He was drinking Southern Comfort, and he later on in the hospital tells the trooper, I'm not going to lie, I was drinking. So we have the defendant's own statements, his own admissions that he was drunk and drinking. Now as to the pupil response, while the defendant was still in the vehicle, his vehicle, Todd Tess, well, just standard examination, looks at his pupils, and he notices that they are uneven and that one is responding slowly. Now Todd Tess says, he testified that this can mean several things. One, it can mean that there is a brain injury or a concussion or something, or it can mean the slow response can be a sign of intoxication. So that is the extent of any medical testimony about a possible brain injury that was before the jury. But the rest of the testimony said he was lucid, he might doze off, and they would do a sternum rub to wake him up, but otherwise he was lucid, and he responded appropriately to questions. And they all testified that he seemed to, well, at least Tess and the trooper testified that he understood the questions he was being asked and responded appropriately. Now, you know, the jury had before it evidence that it was raining and that the conditions were wet. So they obviously had, they considered that in their deliberations about whether or not this was the cause of the accident or whether it was the defendant's inebriation that was the cause of the accident. They apparently resolved it in favor of crediting the defendant's own statements and crediting the paramedics and the trooper that he smelled of alcohol and alcohol was on his breath and the trooper's assessment that he thought the defendant was intoxicated. Therefore, taking this light. Mr. Wills, was there any evidence that you could get a fast pupil response beyond 0.08? There was no evidence concerning what level the pupil response would be different. What the witness testified to was that if someone had, I think the exact word was a lot of alcohol, that that would slow the pupil response. So you could, so there possibly could be an intoxication before a pupil response. The evidence was not specific about what the level would be. But the evidence the state's suggesting is that uneven response would be consistent with intoxication where a brisk pupil response and an uneven pupil response could be, and I don't see anything in the record about that at all. The evidence from the witness was that an uneven pupil response, one brisk and one sluggish would be a sign of brain injury. I believe there's, and there's plenty of other evidence of brain injury. For example, I would point this court to page 581. The first responder on the scene testified that Mr. Bullock was completely unconscious, utterly unresponsive. And what's more, the second responder said he was repeatedly unconscious. He was unconscious when he first got there. He would not respond to stimuli. I would point the court to the RC601 and 603, 609, that he basically gradually improved until he became conscious. I think the record's very clear that he was unconscious when the test first arrived. And this whole business about him not responding except to stimuli, painful stimuli, shows he was unconscious. In addition, there's the uneven pupil response that we talked about. The state makes an argument here that there was no evidence of brain injury. Now, that's unfair because they made no attempt to do accident reconstruction. All that troop had to do was go out there and walk out on that pavement and look at it. It would have been something to see if there were signs of breaking, and he didn't do it. So it's not fair for them to say there's no sign of breaking here. They had a chance to do an accident reconstruction, and they didn't do it. And the state admits that these were wet conditions. The state's brief at 6. It was raining, and the conditions were wet. So there was water on the pavement. It was raining and wet conditions. So I would also point out that the state argues again right here. They argue for this court that there was a half-mile clear road and no car, and that Mr. Bullock traveled that half-mile in two seconds. Now, we know that didn't happen. That did not happen. There was something else. And what that something else was, both of those people saying the same thing, obscured vision. Unless there are questions. Thank you both for your briefs and arguments. Hope to take a matter under advisement, issue its decision in a timely manner.